Dana Wefer, Esq.
Law Offices of Dana Wefer, LLC
375 Sylvan Ave, Suite 32
Englewood Cliffs, NJ 07632
Phone: 973-610-0491

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CATALINA MESSINA, KATHERINE DIEKER, CHRISTOPHER JACOB, ANNA ZIMBERG and ISBABELLA WALZ, | ) ) ) ) |
| Plaintiffs, | ) ) |
| | ) Civil Action |
| vs. | ) ) |
| THE COLLEGE OF NEW JERSEY and THE BOARD OF TRUSTEES OF THE COLLEGE OF NEW JERSEY, | ) VERIFIED COMPLAINT FOR ) DECLARATORY AND INJUNCTIVE ) RELIEF ) |
| | ) ) ) |
| Defendant. | ) |

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs Catalina Messina ("Ms. Messina"), Katherine Dieker ("Ms. Dieker"), Christopher Jacob ("Mr. Jacob"), Anna Zimberg ("Ms. Zimberg") and Isabella Walz ("Ms. Walz") (collectively "Plaintiffs") by and through their counsel, complain against Defendant The Board of Trustees of the College of New Jersey as follows:

**INTRODUCTION**

1. This is a civil action for declaratory and injunctive relief arising under the Fourteenth Amendment to the United

States Constitution.

2. It concerns the constitutionality of The College of New Jersey's Covid-19 Vaccine mandate ("The Mandate"), which requires that all students receive a "Covid-19 vaccination" to attend school.

3. The Mandate violates the liberty and privacy rights protected by the Fourteenth Amendment to the U.S. Constitution, including the right to refuse medical procedures and the right to not be medically surveilled by government actors. It also violates the Equal Protection clause of the 14th Amendment, the constitutional prohibition of unreasonable search and seizure, and the procedural due process clause.

**JURISDICTION AND VENUE**

4. This action arises under the Fourteenth Amendment to the U.S. Constitution.

5. This Court has jurisdiction over all claims pursuant to the Declaratory Judgment Act as codified at 28 *U.S.C.* Sections 2201 and 2202.

6. Venue is proper under 28 *U.S.C.* Section 1391(b) because Defendant is located in this District and because a substantial part of the events giving rise the claim occurred in this District.

**PARTIES**

7. Plaintiffs are all current students at TCNJ, with the exception of Ms. Messina who has been forced to defer a semester due to the Mandate.

8. Defendant Board of Trustees of The College of New Jersey ("The Board") is the governing body of Defendant The College of New Jersey ("TCNJ"). TCNJ is a public institution of higher learning under *N.J.S.A.* 18A:62-1 and the State of New Jersey has delegated the "government, control, conduct, management and administration" of TCNJ to the Board of Trustees. *N.J.S.A.* 18A:64-2. The TCNJ Board of Trustees is operating under the color and authority of law.

**FACTUAL BACKGROUND**

**I. The TCNJ mandate**

9. On May 10, 2021, TCNJ announced that all students must be "fully vaccinated with a COVID-19 vaccine authorized by the U.S. Food and Drug Administration (FDA) or authorized for emergency use by the World Health Organization (WHO)." Covid-19 Student Vaccination Special Requirements- Updated June 8, 2021 ("the Mandate"), attached hereto as Exhibit A.

10. All Plaintiffs live in the United States and would only be able to receive one of the authorized products

manufactured by Pfizer Inc ("Pfizer"), Moderna, Inc. ("Moderna") or Johnson and Johnson subsidiary Janssen ("J&J").

11.   Students were given a deadline of August 9, 2021 to have received a first injection and upload proof of that injection to the Online Wellness Link ("OWL"), a TCNJ web application used to digitally track student medical information.

12.   TCNJ's website states that students who missed the deadline would be deregistered from classes and would become ineligible to participate in academic or extracurricular activities in the 2021 Fall Term.

13.   TCNJ states that it will "consider applications for exemption from the Covid-19 vaccine requirements" for:

    a. Students who are fully remote;

    b. Students who have sincerely held religious beliefs that prevent them from complying with the Mandate; and

    c. Students with a medical contraindication that prevents them from complying with the Mandate.

Exhibit A at IV (A)-(C).

14.   Philosophical and "general objections" to The Mandate are not permitted and a "student's lack of confidence in or comfort with, or objection to the available vaccines

4

will not be sufficient for an exemption." Exhibit A at IV (C)-(D).

15. Students who are already immune are still required to comply with the Mandate. *Id.*

16. Under the policy, all "exemption related documents shall become part of the student's immunization/vaccination record and shall be reviewed periodically by a health professional to determine whether the exemption shall remain in effect and whether additional restrictions shall apply." Exhibit A at IV (E).

17. If TCNJ determines that an exemption no longer applies, then the student is required to receive one of the mandated injections to continue school. This can apparently happen at any time. *Id.*

18. Under the Mandate, students who are granted an exemption are subject to a number of discriminatory and personally invasive conditions that TCNJ calls "accommodations."

   a. They are required to undergo medical testing procedures twice a week. Covid-19 Testing Special Requirements, updated June 8, 2021, attached hereto as Exhibit B;

   b. They must submit to tracking and monitoring of their health through the test results and daily health

screenings[1];

c. They are banned from living on campus;

d. They are *de facto* banned from participating in non-varsity athletic clubs;

e. They are banned from traveling overnight with varsity athletic teams;

f. They are banned from participating in all other activities and recreation that, in TCNJ's determination are high contact;

g. They are not allowed to be physically close to others;

h. They are required to quarantine if they are identified as a "close contact" of someone who tested positive for Covid-19, even if they themselves are healthy, have tested negative, or are immune from infection having already recovered from Covid-19;

i. Their medical information was shared with their professors and perhaps others; and

j. They may be asked to leave classes if there are too many exempted students in one class.

19. The medical surveillance system imposed by TCNJ on students is an ongoing incursion into the students' liberty and privacy.

---

[1] https://fall2021.tcnj.edu/health-and-wellness/#health-checkup

20.  On or about August 27, 2021, TCNJ emailed exempt students concerning mandatory testing. The emails told students they were required to be tested twice weekly on schedule even if they are not on campus. TCNJ warned that "[i]t is critical that you stay on track for testing every 3-4 days regardless of where you are. Going home, visiting sick relatives for a week, etc., are not excuses for a lapse in testing." A copy of the email is attached hereto as Exhibit D.

21.  Students were warned: "Failure to comply with the required testing every 3-4 days will result in your inability to attend classes, disciplinary action and possible suspension." Exhibit D at pg. 2

22.  TCNJ students are staffing the testing centers, checking in their fellow students, and in some instances even performing the test. Affidavit of Anna Zimberg at ¶11, Exhibit L hereto.

23.  In addition to the testing TCNJ also requires exempt students to report their health information to TCNJ on a daily basis as part of the medical surveillance system.

24.  With regard to sports, TCNJ has developed a convoluted and logically inconsistent method for restricting exempted students' participation in sports.

25.  The extent to which "vaccine-exempt" students are

allowed to participate in their sport differs depending on whether they are a varsity or club athlete.  Club athletes are prohibited from training with their team except for "low contact & socially distant drill based practices," and then only if the club's executive board submitted a practice plan with "modified practices" to the Sport Club Coordinator two weeks in advance of the first scheduled practice. If an e-board does not submit such a plan, "vaccine-exempt" students may not practice with the team and the club may be suspended if a "vaccine-exempt" student is allowed to participate. Sport Clubs Reopening Plan Fall 2021, attached hereto as Exhibit C.

26.  In contrast, exempt varsity athletes are allowed to train and compete with their teams[2].

27.  Exempt students cannot participate in clubs where the e-board has not created a special "drill based" practice plan. In practice, this means that exempt students are *de facto* banned from playing non-varsity athletics. *Id.*

28.  Exempt students are completely prohibited from practicing off-campus regardless of whether the sport is "high contact" or "low contact" because "[p]racticing off-

---

[2] https://fall2021.tcnj.edu/health-and-wellness/ (students with an exemption are allowed to participate in varsity sports with "potential restrictions for team travel").

campus does not allow for proper supervision of practices to ensure compliance with [the] guidelines." Thus, "vaccine-exempt" students are completely banned from baseball, bowling, softball, and ice hockey.  Exhibit C.

29.  Both varsity and club athletes who have not received the mandated pharmaceuticals are restricted from traveling with the sports teams to compete.

## II. The Nature of the Mandated Pharmaceuticals

30.  The pharmaceuticals are called "vaccines" by the government, the media, and TCNJ, but it is not clear how they came to be categorized as "vaccines" because they do not fall under any statutory definition or traditional dictionary definition.

31.  The word "vaccine" is not defined in the Vaccination Assistance Act or the National Childhood Vaccine Injury Act, the two federal statutes concerning vaccination.

32.  The mandated pharmaceuticals do fall under the definition of gene therapy products, which the FDA Office of Cellular, Tissue, and Gene Therapies defines as products that are "administered as nucleic acids, viruses or genetically-engineered microorganisms, and mediate effects via: transcription or translation of the transferred

genetic material, or integration into the genome.[3]

33.  The Pfizer and Moderna products are administered as RNA, which is a nucleic acid, and mediate effects by translation of that nucleic acid.[4]

34.  Moderna's S-1 statement confirms that the FDA regulates mRNA products as gene therapy products. Moderna S-1 filing, attached hereto as Exhibit E.

35.  The J&J product is administered as DNA, which is a nucleic acid, and mediates effects by transcription of that DNA.[5]

36.  The Pfizer, Moderna, and J&J products are gene therapy products (hereinafter "the GTPs").

37.  It is not known how long or how well the GTPs work to prevent viral transmission of Sars-Cov2.  Information is being learned in real time.

38.  The Fact Sheets for Recipients for each of the GTPs

---

[3]Andrew Byrnes, "The Chemistry, Manufacturing and Controls (CMC) Section of a Gene Therapy IND" (undated) https://fda.yorkcast.com/webcast/Play/efe41dc555fb4b2eab8f1ce5bb 2ce023 (last accessed September 7, 2021)

[4] Jonathan Corum and Carl Zimmer, *How the Johnson & Johnson Vaccine Works*, New York Times, Updated May 7, 2021 ("The Johnson & Johnson vaccine is based on the virus's genetic instructions for building the spike protein. But unlike the Pfizer-BioNTech and Moderna vaccines, which store the instructions in single-stranded RNA, the Johnson & Johnson vaccine uses double-stranded DNA.") (last accessed September 16, 2021)

[5] *Id.*

states that there are known and unknown side effects that may occur. "Fact Sheet for Recipients and Caregivers" for Pfizer, Moderna, and J&J are attached here to as Exhibits F, G, and H respectively.

39.  Data from the clinical trials shows that most people experience systemic short term symptoms of illness following the GTPs.[6]

40.  Pfizer, Johnson and Johnson, and their subsidiaries have significant criminal records.

41.  Moderna has no track record at all as it has never brought a product to market before and has never had a product approved by the FDA.

42.  The Food and Drug Administration, the federal agency charged with overseeing the safety and efficacy of the GTPs

---

[6] [6]CDC, *Local Reactions, Systemic Reactions, Adverse Events, and Serious Adverse Events: Pfizer-BioNTech COVID-19 Vaccine*,(last reviewed May 14, 2021) available at https://www.cdc.gov/vaccines/covid-19/info-by-product/pfizer/reactogenicity.html#18-systemic-reactions (last accessed September 7, 2021).
[6]CDC, *The Janssen COVID-19 Vaccine's Local Reactions, Systemic Reactions, Adverse Events, and Serious Adverse Events*, (last reviewed August 12, 2021) available at https://www.cdc.gov/vaccines/covid-19/info-by-product/janssen/reactogenicity.html (last accessed September 7, 2021).
[6]CDC, *The Moderna COVID-19 Vaccine's Local Reactions, Systemic Reactions, Adverse Events, and Serious Adverse Events*,(last reviewed August 9, 2021) https://www.cdc.gov/vaccines/covid-19/info-by-product/moderna/reactogenicity.html (last accessed September 7, 2021).

has a history of failing to prevent the public from dangerous pharmaceuticals.

### III. The Plaintiffs and the Mandate's effect on them

43. Plaintiff Catalina Messina is in her last year of study in the Careers and Community Development program at TCNJ, a four year certificate program for students with intellectual disabilities. (Affidavit of Catalina Messina ("Messina Aff.") attached hereto as Exhibit I at ¶7.)

44. Ms. Messina has Asperger's Syndrome and had encephalopathy at birth. Ms. Messina is competent to make her own medical decisions. Messina Aff. at ¶8.

45. Ms. Messina was granted a religious exemption from the Mandate for the Fall 2021 semester, but she is unable to comply with TCNJ's requirement that she undergo Covid testing every 3-4 days because of the mental and physical toll the 30+ medical procedures will take on her. (Messina Aff. at ¶¶6, 9).

46. Because of TCNJ's Mandate and TCNJ's requirement that exempt students undergo medical testing every 3-4 days, Ms. Messina was forced to defer the first semester of her senior year. (Messina Aff. at ¶6).

47. Prior to Covid and prior to the Mandate, Ms. Messina lived on campus and participated in activities on campus. She misses her studies and extracurricular activities like

the Best Buddy Club, a club for students with disabilities and students without disabilities to socialize through events like cooking classes, talent shows, bowling, and other fun activities. (Messina Aff. at ¶¶10, 12).

48. Ms. Messina does not know if her exemption will be allowed in the Spring 2022 semester, but she will not be able to attend school even if it is so long as the medical testing procedures are required.

49. Even if the testing requirements were lifted, living on campus is a requirement of the Careers and Community program and Ms. Messina is banned from living on campus. Ms. Messina does not drive and is not sure how she would get to campus even if she were permitted to stay in the program despite not living on campus. (Messina Aff. at ¶10).

50. TCNJ's Mandate has completely derailed Ms. Messina's education and life plans into which she invested three years of her time and considerable money.

51. Plaintiff Katherine Dieker ("Ms. Dieker") is in her junior year at TCNJ doing a double major in Mathematics and Secondary Education. She is a dedicated student and maintains a 3.96 GPA. Affidavit of Katherine Dieker ("Dieker Aff.") attached hereto as Exhibit J at ¶¶6, 7.

52. Ms. Dieker loves campus life and is highly active at

TCNJ.   She is President of the College Diabetes Network, a member of Kappa Delta Pi (the education honors society), the community liaison for the Council of Student Teachers of Mathematics, and an Orientation Leader for TCNJ. Dieker Aff. at ¶8.

53.  Ms. Dieker has autoimmune conditions, including Type 1 Diabetes.  Her endocrinologist wrote a letter to TCNJ for Ms. Dieker to submit with her request for a medical exemption.  TCNJ sat on the exemption request for 47 days and then rejected it. Dieker Aff. at ¶¶ 18-19.

54.  Ms. Dieker requested and was granted a religious exemption for the Fall 2021 semester.  Dieker Aff. at ¶17.

55.  Ms. Dieker is captain of the Women's Club Lacrosse team, but is not allowed to fully participate in the club and she is not allowed to travel with the team. (Dieker Aff. at ¶9).

56.  Ms. Dieker planned to live on campus this year. On July 13, 2021, she received an email with her move-in assignment, but on July 15, 2021 she was informed that the assignment was cancelled because she has not taken a GTP. Dieker Aff. at ¶11.

57.  Since beginning school, Ms. Dieker has been approached by two of her professors concerning her medical status.

58.  One professor asked Ms. Dieker to voluntarily and

discretely segregate herself from other students. The professor stated that the class would work in groups frequently and told Ms. Dieker that she was intentionally put in a group of three people so she could more easily segregate and physically distance from other students. Dieker Aff. at ¶13.

59. Another professor told Ms. Dieker that one of the accommodations she has for her Type 1 diabetes has to be "tweaked." Ms. Dieker wears a Dexcom device, which monitors her blood sugar and causes her phone to beep if her blood sugar is low. When her blood sugar is low, she must eat or drink to raise it. Consequently, Ms. Dieker has an accommodation allowing her to eat or drink in class to maintain a safe blood sugar level. Her professor told her that they were going to have to "tweak" that accommodation and that she needs to do a better job to make sure she does not have an emergency (i.e., low blood sugar). Ms. Dieker emailed TCNJ's Accessibility Resource Center on September 5, 2021 explaining the situation and asking what she should do, but Disability Support Services did not respond to the email. She visited in person on September 13, 2021 to inquire as to what she should do and is still awaiting a response as of September 16, 2021. Dieker Aff. at ¶¶14-15.

60.  Ms. Dieker has been forced to submit to twice weekly medical procedures in the form of testing to continue her education. She does not want to undergo the medical testing procedures. They have been a detriment to her health and inconvenient to fit into her schedule. Since school started she has suffered two nosebleeds shortly after testing. (Dieker Aff. at ¶16).

61.  Ms. Dieker is afraid that after two years of hard work and investment she will not be able to complete her degree.

62.  Plaintiff Christopher Jacob is in his junior year at TCNJ. He is majoring in communications and maintains a 3.75 GPA. He is a member of the TCNJ Men's Club Soccer team. Affidavit of Christopher Jacob ("Jacob Aff.") attached hereto as Exhibit K at ¶7-9.

63.  Mr. Jacob was granted a religious exemption from TCNJ's mandate for the Fall 2021 semester.

64.  Mr. Jacob is *de facto* banned from participating in the club soccer.  He is not able to participate with the team unless the e-board undertakes the onerous process of creating special drill practices, submitting plans for the practices to the Sport Club Coordinator for approval, and notifying the Sport Club Coordinator each week as to types of practices scheduled that week.

65.  However, if Mr. Jacob were playing varsity soccer, he

would be allowed to train and play with the team.

66. Mr. Jacob objects to the forced testing and medical surveillance of his health as a condition of his education.

67. Plaintiff Anna Zimberg is a sophomore at TCNJ. Affidavit of Anna Zimberg ("Zimberg Aff.") attached hereto as Exhibit L at ¶7.

68. Ms. Zimberg has a medical exemption to the Mandate. Zimberg Aff. at ¶8.

69. Like the other students, Ms. Zimberg is banned from living on campus, is subjected to invasive medical testing every 3-4 days, and is subject to medical surveillance by the school. Zimberg Aff. at ¶9.

70. Ms. Zimberg had the degrading experience of having to submit to medical testing performed by a fellow student who is not a medical professional. (Zimberg Aff. at ¶_).

71. It is unknown why TCNJ has students performing medical testing procedures on other students.

72. Ms. Zimberg has also been subject to discrimination by her professors.

73. One of her professors sent her an email asking her to sit by the window due to her medical status. Her learning experience has been altered by this discrimination because she has ADHD and usually sits front and center. It is harder for her to hear what is going on in class. Zimberg

Aff. at ¶11.

74. Ms. Zimberg is immune to Covid having contracted and recovered from it in April of 2021. Zimberg Aff. at ¶15.

75. Plaintiff Isabella Walz is 20 years old and in her junior year at TCNJ. (Affidavit of Isabella Walz ("Walz Aff.") at ¶¶5-6).

76. Ms. Walz is attending TCNJ with a religious exemption. (Walz Aff. at 8¶)

77. Ms. Walz recently recovered from Covid-19. (Walz Aff. at ¶15).

78. She has been granted a "testing exemption" for three months after she contracted Covid-19. *Id.*

79. After three months, her testing exemption will end and she will be required to submit to twice weekly medical testing procedures and medical surveillance to continue attending school even if she is still immune. *Id.*

80. Ms. Walz has also been contacted by a professor to remind Ms. Walz that she must distance herself from other students due to the her medical status. Walz Aff. at ¶9.


### CONSTITUTIONAL CLAIMS

### I.

### THE MANDATE VIOLATES THE STUDENTS' 14TH AMENDMENT RIGHTS TO LIBERTY AND PRIVACY

81.  Plaintiffs repeat and reallege each of the preceding paragraphs.

82.  The Mandate requires students to choose between receiving experimental gene therapy products or leaving school.

83.  The Mandate requires exempted students to undergo twice weekly medical procedures in the form of testing for Covid-19.

84.  People have a strong liberty and privacy interest and right in exercising sovereignty over their body and declining unwanted medical procedures like the GTP injections and medical testing.

85.  The state's interest in stemming the spread of Covid-19 must be weighed against the individual right to decline medical procedures.

86.  The individual's right to decline the GTPs outweighs the state's interest when:

    a. It is not known how long or how well the GTPs work to prevent viral transmission or sickness;

    b. There are known and unknown risks of taking the GTPs;

    c. The targeted disease has a low mortality rate overall and a very low mortality rate for the individual;

    d. There are a wide range of treatments available for people who do become sick with the virus;

e. The individual who the state wishes to compel to take the GTP is healthy and the procedure provides minimal, if any, benefit to them;

f. the individual who the government wishes to compel to take the GTP has been advised by their doctor not to take the GTP;

g. The medical procedure the government wishes to compel is novel and experimental with unknown long-term effects;

h. The medical procedure is likely to make an individual sick in the short term;

i. The medical procedure was been invented by and is manufactured by corporations with criminal track records or no track record at all;

j. The federal agency tasked with oversight of public safety is plagued by scandals and high profile failures;

k. The medical procedure involves a new technology that has never before been approved for or used in healthy humans;

l. The Mandate is a bureaucratic enactment, not legislative action;

m. It does not account for students who are naturally immune; and

      n. It treats exempt athletes playing the same sport differently depending on whether they are members of the varsity team or club team.

87. TCNJ's requirement that Plaintiffs undergo medical testing procedures every 3-4 days is not narrowly tailored to achieve a compelling purpose.

88. TCNJ's requirement that Plaintiffs undergo medical testing procedures every 3-4 days is an unconstitutional incursion on Plaintiffs' liberty and privacy rights.

89. The Mandate is unconstitutional.

## II.

### THE MANDATE VIOLATES EXEMPTED STUDENTS 14TH AMENDMENT RIGHTS TO PRIVACY AND LIBERTY BY MEDICALLY SURVEILING THEM

90. Plaintiffs repeat and reallege all of the preceding paragraphs as if set forth at length herein.

91. The Mandate requires Plaintiffs to undergo the medical procedure of testing for Covid-19 twice weekly and to report those results to the school.

92. Plaintiffs are required twice a week to set aside personal time to go to a testing center to submit their bodily fluids for analysis.

93. They are required to do this regardless of whether they are sick or healthy.

94. Plaintiffs are required to upload their test results to

the Online Wellness Link so that the school may track their medical and health status.

95.   Plaintiffs are required to make daily reports to TCNJ about their health.

96.   Students who do not comply must either take a GTP or will be subject to disenrollment.

97.   Students are required to comply with medical testing requirements even when they are away from campus.

98.   There is no legal or historical precedent for a state to require healthy students to submit to ongoing invasive medical testing and continually report their health status to a state entity.

99.   The lack of precedent is *prima facie* evidence that the liberty to be free from invasive testing and medical surveillance by the state is fundamental and deeply rooted in the country's history and tradition.

100. The state's interest in stemming the spread of Covid-19 must be weighed against the individual right to privacy and to not have their health surveilled by a government entity.

101. The individual's right to be free of medical surveillance by a government entity outweighs the state's interest and the medical surveillance is not narrowly tailored to achieve a compelling state interest.

### III.
### THE MANDATE VIOLATES THE EQUAL PROTECTION CLAUSE OF THE 14TH AMENDMENT

102. Plaintiffs repeat and reallege each of the preceding paragraphs as if set forth at length herein.

103. Students who assert their constitutional rights under the 14th Amendment and do not receive the GTP are banned from attending TCNJ while students who agree to receive the GTP are allowed to continue attending.

104. Students who were granted an exemption to the unconstitutional Mandate are subjected to unequal treatment that implicates fundamental rights.

105. The unequal treatment is not narrowly tailored to serve a compelling government interest.

106. Students who are subject to unequal treatment under The Mandate because they did not receive a GTP are a discrete and identifiable group.

107. Students who are subject to unequal treatment under the Mandate because they were granted an exemption to the Mandate for Fall 2021 are a discrete and identifiable group.

108. The Equal Protection clause is violated by TCNJ's policy as to exempt students in many ways, including the following:

a. TCNJ is informing professors of their private medical information;

b. TCNJ professors are treating the students on the list unequally;

c. TCNJ prohibits the exempt students from participating in a range of sports and activities based on their medical status;

d. TCNJ further treats exempt students unequally based on whether they are playing for the varsity or club sport;

e. TCNJ requires the exempt students to undergo medical testing and surveillance, which is not required of students who took the GTPs;

f. Exempt students are banned from living on campus; and

g. Exempt students are subject to removal from classes if there are too many other exempted students in the class.

109. The unequal treatment is not narrowly tailored to achieve a compelling state interest.

## IV.
## THE MANDATORY MEDICAL TESTING VIOLATES THE STUDENTS' RIGHT TO BE FREE FROM UNREASONABLE SEARCH AND SEIZURE

110. Plaintiffs repeat and reallege all of the preceding paragraphs as if set forth fully herein.

111. The medical testing requires students to surrender their bodily fluids for analysis without any particularized suspicion, without a warrant, and without due process.

112. The medical testing requires students to surrender and report personal information about their health status without any particularized suspicion, without a warrant, and without due process.

113. The medical testing is a violation of the students' right to be free from unreasonable search and seizure as set forth in the Fourth Amendment and applied to the school through the Fourteenth Amendment.

## V.

## VIOLATION OF 42 U.S.C. §1983

114. Plaintiffs repeat and reallege each of the preceding paragraphs as if set forth fully herein.

115. TCNJ has, while acting under the color and authority of law, deprived Plaintiffs of their constitutional rights.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs request the following relief:

116. Declare TCNJ's Vaccine Mandate unconstitutional;

117. Declare TCNJ'S Mandate unconstitutional as applied to each Plaintiff;

118. Enjoin TCNJ from enforcing the Mandate;

119. Enjoin TCNJ from forcing healthy students to undergo

medical testing procedures;

120. Enjoin the medical surveillance of TCNJ students;

121. Enjoin TCNJ from discriminating against students who were not in compliance with the Mandate through additional requirements, restrictions, or disclosures of personal medical information;

122. Grant Plaintiffs their costs and attorneys fees under 42 U.S.C. Section 1988 and any other applicable authority; and

123. Grant any and all other such relief as this Court deems just and equitable.


Respectfully submitted,


Dated:     September 22, 2021

s/ Dana Wefer, Esq.

Dana Wefer, Esq.
Attorney at Law
375 Sylvan Ave, Suite 32
Englewood Cliffs, NJ 07075
Phone: (973) 610-0491
Fax: (877) 771-2211
Email: DWefer@WeferLawOffices.com
Attorney for Plaintiffs

## COMPLAINT VERIFICATION

Each of the Plaintiffs has sworn in the attached and incorporated Declarations that all facts pertaining or relating to them are true under penalty of perjury.

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

The matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

Dated: September 26, 2021    /s Dana Wefer, Esq.
                                       Dana Wefer, Esq.
                                       Attorney at Law
                                       375 Sylvan Ave, Suite 32
                                       Englewood Cliffs, NJ 07075
                                       Phone:  (973) 610-0491
                                       Fax:  (877) 771-2211
                                       Email: DWefer@WeferLawOffices.com
                                       Attorney for Plaintiffs

JS 44 (Rev. 08/18)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS** Catalina Messina, Katherine Dieker, Christopher Jacob, Anna Zimberg and Isabella Walz

**DEFENDANTS** The College of New Jersey and The Board of Trustees of the The College of New Jersey

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Law Offices of Dana Wefer
375 Sylvan Ave, Suite 32
Englewood Cliffs, NJ 07632

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question *(U.S. Government Not a Party)*
☐ 2 U.S. Government Defendant
☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                    *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                    Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
U.S. Constitution
Brief description of cause:

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

**VIII. RELATED CASE(S) IF ANY**  *(See instructions):*
JUDGE                                        DOCKET NUMBER

DATE 9/26/21

SIGNATURE OF ATTORNEY OF RECORD  *Dana Wefer*

**FOR OFFICE USE ONLY**

RECEIPT #            AMOUNT            APPLYING IFP            JUDGE            MAG. JUDGE