UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CATALINA MESSINA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>THE COLLEGE OF NEW JERSEY, *et al.*,<br><br>Defendants. | Civil Action No. 21-17576 (ZNQ) (DEA)<br><br>**OPINION** |

**QURAISHI, District Judge**

     **THIS MATTER** comes before the Court upon a Motion for Temporary Restraining Order filed by Plaintiffs Catalina Messina, Katherine Dieker, Christopher Jacob, Anna Zimberg, and Isabella Walz (collectively "Plaintiffs").  (the "Motion," ECF No. 2.)  Plaintiffs filed a Brief in Support of the Motion.  ("Moving Br.," ECF No. 3.)  Defendants The College of New Jersey ("TCNJ") and The Board of Trustees of the College of New Jersey (collectively, "Defendants") opposed the Motion, (Opp'n Br., ECF No. 7), to which Plaintiffs replied, (Reply, ECF No. 9). This Court carefully considered the parties' submissions and decided the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.  For the reasons stated herein, the Motion will be denied.

**I.**     **BACKGROUND**

     On September 27, 2021, Plaintiffs filed a complaint (the "Complaint") seeking declaratory and injunctive relief from TCNJ's COVID-19 Vaccine mandate (the "Mandate").  (Compl. ¶ 2, ECF No. 1.)  Plaintiffs are all current students at TCNJ except for Messina, who deferred enrollment for a semester.  (*Id.* ¶ 7.)  According to the Complaint, on May 10, 2021, TCNJ implemented the Mandate requiring all students to be "fully vaccinated with a COVID-19 vaccine

authorized by the U.S. Food and Drug Administration (FDA) or authorized for emergency use by the World Health Organization (WHO)." (*Id.* ¶ 9.)  TCNJ gave their students until August 9, 2021, to receive the first dose of the vaccine and upload proof of same to TCNJ's online application that tracks students' medical information.  (*Id.* ¶ 11.)  TCNJ's website advised students that failure to meet the vaccination deadline would result in deregistration from classes and render them "ineligible to participate in academic or extracurricular activities in the 2021 Fall Term."  (*Id.* ¶ 12.)

Plaintiffs further allege that TCNJ would "consider applications for exemption" from students who were fully remote, who "sincerely held religious beliefs that prevented them from complying with the Mandate," or who had "a medical contraindication that prevent[ed] them from complying with the Mandate."  (*Id.* ¶ 13.)  General objections to the COVID-19 vaccine requirement along with "lack of confidence in or comfort with, or objection to the available vaccines [were not] sufficient for an exemption."  (*Id.* ¶ 14.)  Under the Mandate, exemption-related documents become part of a student's immunization record and are subject to periodic review by health professionals.  (*Id.* ¶ 16.)

In addition, the Complaint alleges that the Mandate required students exempt from the COVID-19 vaccination requirement "to undergo medical testing procedures twice a week" and "submit to tracking and monitoring of their health through the test results and daily health screenings."  (*Id.* ¶ 18.)  The Mandate also required exempt students to practice social distancing, and it banned them from living on campus, participating in non-varsity athletic clubs, engaging in high contact activities, and traveling overnight with varsity teams.  (*Id.*)

The Complaint contains the following counts: The Mandate Violates the Students' Fourteenth Amendment Rights to Liberty and Privacy (First Cause of Action) (*Id.* ¶¶ 81–89); The

Mandate Violates Exempted Students' Fourteenth Amendment Rights to Liberty and Privacy by Medically Surveilling Them (Second Cause of Action) (*Id.* ¶¶ 90–101); The Mandate Violates the Equal Protection Clause of the Fourteenth Amendment (Third Cause of Action) (*Id.* ¶¶ 102–08); The Mandatory Medical Testing Violates the Students' Right to be Free from Unreasonable Searches and Seizures (Fourth Cause of Action) (*Id.* ¶¶ 110–13); Violation of 42 U.S.C. § 1983 (Fifth Cause of Action) (*Id.* ¶¶ 114–15).

On September 27, 2021, Plaintiffs applied for emergency relief, pursuant to Fed. R. Civ. P. 65, seeking a temporary restraining order and/or preliminary injunction to enjoin TCNJ "from enforcing any special requirements of students who have not received [the COVID-19 vaccine]," such as routine medical testing and social distancing.  (Motion at 1–2.)

## II.    PARTIES' ARGUMENTS

### A. Plaintiffs' Moving Brief

Plaintiffs argue that the Mandate is unconstitutional because it violates the due process and equal protection under the Fourteenth Amendment in multiple ways, including "the liberty and privacy to decline medical procedures, the liberty and privacy to be free of government medical testing, the liberty and privacy to be free from government medical surveillance, and the right to participate equally in campus activities."  (Moving Br. at 6–7.)  Plaintiffs contend they are likely to succeed on the merits because "there is *no precedent* historically or legally to which TCNJ can point to justify its [Mandate]."  (*Id.* at 38) (emphasis in original).

Plaintiffs distinguish this case from *Jacobson* and its progeny in several ways.[1]  First, they argue that *Jacobson* is inapplicable because the COVID-19 vaccines are not vaccines but are instead "Gene Therapy Products."  (*Id.* at 9–10.)  Plaintiffs claim the COVID-19 vaccines "do not

---

[1] *Jacobson v. Massachusetts*, 197 U.S. 11 (1905).

3

fall under any relevant statutory definition" and "are excluded from most dictionary definitions due to their composition." (*Id.* at 10.) Plaintiffs note that there exists "no statutory definition for the word 'vaccine' in federal statutes concerning vaccination." (*Id.* at 11.) Neither the Vaccination Assistance Act of 1962 ("VAA") nor the National Childhood Vaccine Injury Act ("NCVIA") provide a definition for the word "vaccine." (*Id.* at 10–11.) In addition, the COVID-19 vaccines "do not fit under the traditional meaning of the word vaccine" and do not qualify as vaccines under most dictionary definitions. (*Id.* at 18–19.)

Second, Plaintiffs further distinguish this case from *Jacobson* by emphasizing that this action does not involve a legislative enactment. (*Id.* at 10.) They argue that this action challenges TCNJ's "bureaucratic" Mandate instead of a legislative enactment like in *Jacobson*. (*Id.* at 19.) This action falls "outside the ambit of *Jacobson*" because "the Mandate is not the result of a legislative process." (*Id.* at 19–20.)

Third, Plaintiffs claim the consequence of declining the COVID-19 vaccine is far more serious here than in *Jacobson*. (*Id.* at 10.) They argue that *Jacobson* involved a minor fine while TCNJ's Mandate "imposes an invasive system of ongoing medical testing, medical surveillance, and segregation." (*Id.* at 20.) *Jacobson* is not controlling in this instance because TCNJ's liberty intrusion is much greater. (*Id.* at 21.) Plaintiffs contend the TCNJ Mandate "derails a person's plotted course in life by banning them from continuing their education at TCNJ despite years of investment and considerable expense." (*Id.* at 20.) For example, "[e]xempt students must undergo twice weekly medical testing procedures and daily medical reporting and surveillance." (*Id.* at 21). In addition, unvaccinated students "are banned or highly limited from partaking in regular campus activities," and their vaccination status is reported to their teachers. (*Id.*)

4

Fourth, Plaintiffs claim COVID-19 vaccines are not supported by "a century of medical data" and "scientific consensus" like the smallpox vaccine in *Jacobson*. (*Id.* at 10.)  When the Supreme Court decided *Jacobson*, the "smallpox vaccine and information concerning its safety existed for more than 100 years at the time." (*Id.* at 21).  By contrast, Plaintiffs argue the COVID-19 vaccines are "novel medical products" that have existed for less than two years, "have been administered to the general population for less than a year, and *are still in clinical trials*." (*Id.* at 21–22) (emphasis in original).  For this reason, *Jacobson* is inapplicable because "[k]nowledge concerning the [COVID-19 vaccines'] efficacy and safety is evolving in real time." (*Id.*)

In conclusion, Plaintiffs urge this Court to apply strict scrutiny because they contend *Jacobson* does not apply. (*Id.*)  They argue that the Mandate is unconstitutional because requiring vaccination and medical testing violates their fundamental right to refuse medical treatment. (*Id.* at 22–23.)  Moreover, they posit that the ongoing medical surveillance and disclosure of personal medical information to professors infringe their privacy interests under the Fourteenth Amendment. (*Id.* at 23.)  Plaintiffs ask this Court to consider several factors in balancing TCNJ's interest against intrusion of Plaintiffs' fundamental liberties. (*Id.* at 23–38.)  Alternatively, Plaintiffs contend the unconstitutional conditions doctrine applies. (*Id.* at 6, 20.)

As for irreparable harm to Plaintiffs, they argue that allowing the Mandate to stand would result in "repeated violations of their rights and bodily autonomy." (*Id.* at 38–39).  For Messina, "it means a total derailment of her education because she cannot attend school." (*Id.* at 39.)  As for Dieker, Jacob, Zimberg, and Walz, "they must indefinitely undergo twice weekly medical testing procedures, continue under intrusive medical surveillance of their private health information, and continue to be singled out and treated in a discriminatory manner . . . ." (*Id.*)  In

5

contrast, Plaintiffs contend Defendants will suffer no harm if the Mandate were enjoined and that Defendants have "many alternative and constitutional methods" at their disposal to control the spread of COVID-19 on campus.  (*Id.*)  Last, they argue that enjoining unconstitutional policies that intrude on liberty and privacy rights serves the public interest.  (*Id.* at 40.)

### B.  Defendants' Opposition

Defendants argue that this Court should deny Plaintiffs' motion because they will not succeed on the merits "and the remaining equitable factors militate against granting the requested relief."  (Opp'n Br. at 16.)  First, they claim they are immune from suit in this Court because "TCNJ is an arm of the State of New Jersey" and enjoys sovereign immunity.  (*Id.* at 17–20.)

Second, Defendants argue that Plaintiffs have no standing to challenge the Mandate because they have no injury-in-fact. (*Id.* at 21.)  Defendants contend that Plaintiffs' "mere disagreement with the vaccine requirement does not confer standing on them."  (*Id.*)  Plaintiffs received exemptions from the vaccine requirement and "pled no facts suggesting concrete and imminent imposition of the vaccine requirement."  (*Id.*)  Moreover, TCNJ's policy of periodic reviews of exempt students by health professionals does not confer standing.  (*Id.*)

Third, Defendants argue that *Jacobson* forecloses any constitutional challenge to the Mandate.  (*Id.* at 22.)  Defendants note that "courts reviewing similar college COVID-19 vaccine mandates have uniformly concluded[] *Jacobson* controls."  (*Id.* at 22–23.)  In response to Plaintiffs' argument that the COVID-19 vaccines are "Gene Therapy Products," Defendants argue that Plaintiffs cite no medical authority for the proposition that the three FDA-authorized COVID-19 vaccines are not vaccines.  (*Id.* at 23.)  As for Plaintiffs' arguments concerning the efficacy of the COVID-19 vaccines, Defendants emphasize that, in *Jacobson*, the Court specifically explained that it is not the court or the jury's function to determine the most effective

method to protect the public against diseases.  (*Id*. at 24–25.)  With respect to Plaintiffs' argument that this action challenges a mandate rather than a legislation, Defendants explain that, in *Jacobson*, the City of Cambridge adopted a smallpox vaccine regulation pursuant to a general statute dealing with vaccinations.  (*Id*. at 26.)  In comparison, colleges and universities in New Jersey are allowed to mandate vaccinations pursuant to a general statute as well.  (*Id*.)  "[C]olleges and universities have long required numerous vaccinations as a prerequisite for attendance and communal living" on campus.  (*Id*. at 25.)  They note that if "schools were powerless to adopt basic immunization measures, it would be unable to ensure its very ability to operate in a safe setting and provide educational services at all."  (*Id*. at 25 –26.)  Defendants rely on *Klaassen v. Trustees of Indiana University*, 7 F.4th 592, 593 (7th Cir. 2004), for the proposition that TCNJ's Mandate is subject to rational basis review and argues that TCNJ's Mandate "is a rational way to ensure public health protection for the campus community."  (*Id*. 26–27.)

As for Plaintiffs' arguments against regular COVID-19 testing and social distancing for exempt students, Defendants contend Plaintiffs provide no support for their constitutional claims.  (*Id*. at 28.)  First, "there is simply no support in law for the proposition that routine testing for an airborne, contagious disease during a pandemic violates substantive due process."  (*Id*. at 29.)  Conducting regular testing to detect a potentially deadly, airborne disease during a pandemic is vital to public safety just like compulsory vaccination.  (*Id*.)  Second, Plaintiffs "could choose not to be subject to any of TCNJ's rules" because "there is no fundamental right to attend this particular college."  (*Id*. at 30.)  "If Plaintiffs do not wish to be subject to TCNJ's rules, they are free to withdraw."  (*Id*. at 31.)  Third, even if Plaintiffs could make out a substantive due process claim against TCNJ's testing and social distancing requirements, the requirements pass rational basis review given the public's interest in preventing the spread of COVID-19.  (*Id*.)  Defendants explain

that the "testing requirement is an effective mechanism to ensure early detection of COVID-19 cases in the campus community" and that even the CDC "recommended that campuses implement regular testing requirements to control the spread of the virus." (*Id.*)

Defendants further argue that Plaintiffs Equal Protection and Fourth Amendment claims are meritless. (*Id.* at 32.) Defendants contend that Plaintiffs' claims are subject to rational basis review because vaccination status is not a suspect class. (*Id.*) Defendants argue that TCNJ's Mandate "for unvaccinated students clearly bears 'a rational relation to some legitimate end' . . . because its testing and social distancing requirements are rationally related to the government interest in preventing COVID-19 spread and negative health effects for students and the community." (*Id.*) As for Plaintiffs' Fourth Amendment claim, Defendants argue that "[t]esting requirements during a pandemic for unvaccinated students do not constitute an unreasonable search. (*Id.* at 33.) Defendants reiterate that Plaintiffs chose to be subjected to TCNJ's requirements for unvaccinated students because they chose to attend TCNJ in person and also sought—and were granted—exemptions from the vaccination requirement. (*Id.*) Defendants emphasize Plaintiffs had alternatives available to avoid testing, such as becoming vaccinated, enrolling in online courses, or attending a different college. (*Id.*) Last, Defendants argue that Plaintiffs' Fourth Amendment claims have no likelihood of success on the merits because the government's interest in preventing COVID-19 from spreading outweighs the minimal intrusion into a student's privacy interest, especially where the student has a diminished expectation of privacy because he or she attends a public school. (*Id.* at 33–34.)

Finally, Defendants argue that Plaintiffs have failed to demonstrate irreparable harm because Plaintiffs were not forced to receive the COVID-19 vaccine and any alleged inconvenience caused by the testing and social distancing requirements falls short of the

irreparable harm.  (*Id*. at 35–36.)  Since Plaintiffs waited over four months to request injunctive

relief, any harm resulting from this delay is self-inflicted rather than irreparable.  (*Id.* at 36–37.)

Defendants contend that enjoining TCNJ's Mandate would result in irreparable harm to TCNJ and

the community at large because the spread of COVID-19 threatens public health and safety.  (*Id.*

at 38–40.)

### C. Plaintiffs' Reply

Plaintiffs argue they have standing to bring this action because they suffered an injury in

fact, there exists a causal connection between the injury and TCNJ's conduct, and there is

likelihood their injury will be redressed by a favorable decision.  (Reply at 2.)  They claim that the

Mandate requires exempt students—such as themselves—to undergo testing, segregation, and

other impositions.  (*Id.*)  Plaintiffs distinguish this action by arguing that they "were subjected to

disparate treatment or other constitutional violations predicated on their exempt status . . . ."  (*Id.*)

Additionally, they argue that TCNJ's sovereign immunity argument is irrelevant and "belongs in

a motion to dismiss."  (*Id.* at 15.)

Plaintiffs reiterate that *Jacobson* is inapplicable because: (1) this action does not challenge

a vaccine but rather "pharmaceuticals," which fall outside the scope of *Jacobson*; (2) the TCNJ

Mandate is not legislative; and (3) "the consequences for declining the pharmaceuticals are more

serious and extreme than" in *Jacobson*.  (*Id.* at 3.)   In response to Defendants' argument that the

FDA classified the COVID-19 vaccines as vaccines, Plaintiffs urge this court "to look at the

substance of what the pharmaceuticals are, not just how they are labeled by federal agencies."  (*Id.*

at 3–4.)  They argue that the FDA's "classification of [the COVID-19 vaccines] as such is not

determinative," and this Court "is required to look at substance over form."  (*Id.* at 6.)  Plaintiffs

contend "it is clear that [the COVID-19 vaccines] are not 'vaccines' under *Jacobson* or the

ordinary meaning that would be found in the dictionary of most libraries." (*Id.*)  Plaintiffs also differentiate the COVID-19 vaccines from the smallpox vaccine in *Jacobson* by arguing that the COVID-19 vaccines are novel, use novel technology that has been tested for less than two years, "have been available to the public for less than a year, and are still in clinical trials." (*Id.*)

Moreover, Plaintiffs contend that Defendants failed to provide any case law that supports TCNJ's medical testing and surveillance requirements for those students exempt from vaccination. (*Id.* at 7.)  They maintain that there is no precedent for "ongoing indefinite weekly testing" and surveillance.  (*Id.* at 7–9.)  "TCNJ cannot assert any special need for the testing and has not shown any data that testing students who have not taken the [vaccine] is protecting the campus." (*Id.* at 9.)  Plaintiffs contend TCNJ's argument that Plaintiffs are free to attend another school ignores the unconstitutional conditions doctrine.  (*Id.*)

Finally, Plaintiffs urge this court to apply strict scrutiny because "Plaintiffs' liberty rights in declining the [vaccine] is very strong compared to TCNJ's asserted interests." (*Id.* at 9–10.)  In weighing the competing interests, they discuss the vaccine's efficacy and natural immunity at length.  Plaintiffs argue they will suffer irreparable harm from the Mandate's imposition on exempt students such as themselves.  (*Id.* at 15.)  They contend their delay in filing this action "is irrelevant and excusable because they are college students" and are "disadvantaged at securing legal counsel." (*Id.*)

## III.   <u>LEGAL STANDARD</u>

Rule 65 governs temporary restraining orders and preliminary injunctions.  Fed. R. Civ. P. 65; *Vuitton v. White*, 945 F.2d 569, 573 (3d Cir. 1991).  A restraining order loses its temporary status and becomes a preliminary injunction if it continues beyond a ten-day limit.  *Id.* (citing *Sims v. Greene*, 160 F.2d 512, 517 (3d Cir. 1947)).  Courts "will look beyond terminology to the actual

content, purport, and effect of that which may otherwise described as a temporary restraining order or as a preliminary injunction." *In re Arthur Treacher's Franchise Litig.*, 689 F.2d 1150, 1155 n.7 (3d Cir. 1982).

"Preliminary injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'" *Ferring Pharms., Inc. v. Watson Pharms, Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merk Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)). As courts in this district have emphasized, "there is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing [of] an injunction." *FM 103.1, Inc. v. Universal Broad.*, 929 F. Supp. 187, 193 (D.N.J. 1996) (citing *E.B. v. Poritz*, 914 F. Supp. 85, 90 (D.N.J. 1996)). A court should only issue an injunction "if the plaintiff produces evidence sufficient to convince the district court that *all four factors* favor preliminary relief." *AT&T v. Winback & Conserve Program*, 42 F.3d 1421, 1427 (3d Cir. 1994) (emphasis added). Further, it is within "the sound discretion of the district judge" to balance all of these factors "in making a decision." *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3d Cir. 1982).

A party seeking a preliminary injunction must satisfy the traditional four-factor test: (1) a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief. *Child Evangelism Fellowship of N.J. Inc. v. Stafford Twp. Sch. Dist.*, 386 F.3d 514, 524 (3d Cir. 2004). However, "the moving party must demonstrate *both* a likelihood of success on the merits and the probability of irreparable harm if relief is not granted." *Morton v. Beyer*, 822 F.2d 364, 367 (3d Cir. 1987) (emphasis in original). "A likelihood of success on the merits requires 'a showing significantly better than negligible but not necessarily more

likely than not.'" *Durel B. v. Decker*, 455 F. Supp. 3d 99, 106 (D.N.J. 2020).  The strength of a claim "depends on the balance of the harms: the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief.'" *Id.* (quoting *Hoosier Energy Rural Elec. Coop., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009)).

## IV.   <u>DISCUSSION</u>

As a preliminary matter, the Court first addresses Defendants' claim to sovereign immunity.  Determining whether a public college is a state entity for Eleventh Amendment purposes involves "a fact-intensive review that calls for individualized determinations." *Bowers v. NCAA*, 475 F.3d 524, 546 (3d Cir. 2007); *Kovats v. Rutgers, State Univ.*, 822 F.2d 1303, 1312 (3d Cir. 1987) ("[E]ach state university exists in a unique governmental context, and each must be considered on the basis of its own peculiar circumstances.") (quoting *Soni v. Bd. of Trs. of the Univ. of Tenn.*, 513 F.2d 347, 352 (6th Cir. 1975)).  Notably, not every public state college or university enjoys the protection of sovereign immunity in New Jersey.  *See Kovats*, 822 F.2d at 1312 (regarding Rutgers University); *Bostanci v. N.J. City Univ.*, Civ. No. 8-4339, 2010 WL 4961621, *1 (D.N.J. Dec. 1, 2010) (regarding New Jersey City University).

The Third Circuit adopted a three-part test to determine if "an entity is an arm of the state for Eleventh Amendment purposes.  That test examines the following three elements: (1) whether the payment of the judgment would come from the state; (2) what status the entity has under state law; and (3) what degree of autonomy the entity has." *Bowers*, 475 F.3d at 546; *see also Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655 (3d Cir. 1989).  "[T]he party asserting Eleventh Amendment immunity (and standing to benefit from its acceptance) bears the burden of proving its applicability." *Christy v. Pa. Turnpike Comm'n*, 54 F.3d 1140, 1144 (3d Cir. 1995).  In baldly

asserting sovereign immunity, Defendants provide nothing more than conclusory statements under this three-part test. The Court, therefore, finds that Defendants have failed to meet their burden of proving its applicability.[2]  Although Defendants have failed to establish sovereign immunity at this time, this issue may nonetheless be revisited at a later stage. *See Brennan v. William Paterson Coll.*, 34 F. Supp. 3d 416, 432 (D.N.J. 2014).

Moreover, after a careful review of the parties' submissions and relevant case law, this Court concludes that Plaintiffs failed to satisfy the requirements necessary to grant injunctive relief.

## A. Likelihood of Success on the Merits

Given United States Supreme Court precedent and persuasive authorities from other circuits on this issue, this Court concludes that Plaintiffs failed to establish their likelihood of success on the merits.   In *Jacobson v. Massachusetts*, the Supreme Court upheld the constitutionality of a state compulsory vaccination law enacted to combat a smallpox outbreak. 197 U.S. at 39.  Pursuant to the state statute in that case, the board of health for the City of Cambridge adopted regulations requiring its residents to receive the smallpox vaccine. *Id.* at 12–13. Jacobson, a resident of Cambridge, refused the vaccine and was criminally charged. *Id.* at 13. After a jury found Jacobson guilty, the court ordered him to pay $5 as required by the state statute. *Id.* at 14. *Jacobson* challenged the state statute and argued that it violated his constitutionally protected liberty interest because it was unreasonable, arbitrary, and oppressive. *Id.* at 26.

---

[2]  Contrary to Defendants' argument, this Court also finds that Plaintiffs have standing to bring this action because they allege the Mandate places several unconstitutional requirements on exempt students such as themselves. Plaintiffs have alleged "an invasion of a legally protected interest" that is concrete, particularized, and imminent. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)); *see In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 272 (3d Cir. 2016).

The *Jacobson* Court emphasized that the "liberty secured by the Constitution . . . does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint." *Id.* at 26. The Court recognized that states have the authority to enact quarantine and health laws, *id.* at 25, and that "a community has the right to protect itself against an epidemic of disease which threatens the safety of its members," *id.* at 27. The Court explained that it was not the judiciary's role to determine the most effective method to protect the public against disease. *Id.* at 30. Instead, "[t]hat was for the legislative department to determine in the light of all the information it had or could obtain." *Id.* Applying a deferential standard, the Court asserted that it would only find a statute unconstitutional if the statute purporting to protect public health, safety, and morals had "no real or substantial relation" to those objectives or was, "beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *Id.* at 31. The Court concluded the Massachusetts statute was constitutional because it had a real and substantial relation "to the protection of the public health and the public safety" amid the smallpox epidemic. *Id.* at 30–32. *See Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 70 (2020) (Gorsuch, J., concurring) (explaining that *Jacobson* is "essentially . . . rational basis review").

In *Klaassen v. Trustees of Indiana University*, 7 F.4th 592, 594 (7th Cir. 2021), the Seventh Circuit rejected similar arguments made by plaintiffs who challenged Indiana University's COVID-19 vaccination policy. In that case, eight students from Indiana University sought to enjoin the university's policy requiring "all students . . . [to] be vaccinated against COVID-19 unless they [were] exempt for religious or medical reasons." *Id.* at 592. More specifically, the plaintiffs claimed this policy violated the Due Process Clause under the Fourteenth Amendment. *Id.* The court rejected the plaintiffs' argument and noted that "this case [wa]s easier than *Jacobson* for the University, for two reasons." *Id.* at 593. First, unlike the compulsory vaccination law in

14

*Jacobson*, Indiana's policy provided exemptions for "religious beliefs and persons for whom vaccination [was] medically contraindicated." *Id.* The Seventh Circuit explained that the plaintiffs who were exempt or qualified for an exemption "just need[ed] to wear masks and be tested, requirements that are not constitutionally problematic." *Id.* Second, "Indiana does not require every adult member of the public to be vaccinated, as Massachusetts did in *Jacobson*. Vaccination is instead a condition of attending Indiana University." *Id.* The Seventh Circuit noted that those who do not wish to be vaccinated "may go elsewhere" because there are other universities that do not require COVID-19 vaccination. *Id.* The Seventh Circuit denied the plaintiffs' request for an injunction pending appeal and concluded by stating, "If conditions of higher education may include surrendering property [to pay tuition] and following instructions about what to read and write [as part of the curriculum], it is hard to see a greater problem with medical conditions that help all students remain safe when learning." *Id.* at 594. Notably, the United States Supreme Court also denied the plaintiffs' application for injunctive relief without explanation. *Klaassen v. Trs. of Ind. Univ.*, No. 21A15, 2021 U.S. LEXIS 3677 (U.S. Aug. 12, 2021).

Similarly, in *Harris v. University of Massachusetts, Lowell*, Civ. No. 21-11244, 2021 WL 3848012, at *8 (D. Mass. Aug. 27, 2021), a district court denied the plaintiffs' motion for injunctive relief seeking to prevent the University of Massachusetts ("UMass") from enforcing COVID-19 vaccine requirements before the school year began. In that case, UMass imposed a vaccine requirement for students reporting to campus during the fall semester, and two students— one who sought exemption and the other who did not—brought suit alleging violations of their Fourteenth Amendment rights. *Id* at *1–2. In their complaint, the plaintiffs alleged they faced expulsion for refusing the COVID-19 vaccine. *Id.* at *2. The court disagreed and determined the plaintiffs had no likelihood of success on the merits. *Id.* at *5. As for the plaintiffs' procedural

due process claim, the court rejected the plaintiffs' argument that the vaccine policy left them without an option because it prohibited unvaccinated students from in-person classes, dormitories, and other activities but allowed them to still enroll in online classes.  *Id.*  The court further explained that the plaintiffs' due process claim also failed because even if the plaintiffs were faced with expulsion, the vaccine policy, which was announced in April 2021, was "generally applicable to all students and formulated prospectively toward the fall semester." *Id.*  The court also rejected the plaintiffs' substantive due process claim after applying rational basis review. *Id.* at *6.  The court explained that the vaccine policy, which was based "upon both medical and scientific evidence and research and guidance," rationally related to the unquestionably compelling interest of curbing the spread of COVID-19. *Id.*  In doing so, the court explained that the UMass vaccine policy "pose[d] even fewer constitutional concerns than in *Jacobson*" because the policy allowed students to seek exemptions, opt to take online classes, or defer their enrollment for the semester. *Id.*  The court next determined that the remaining factors for granting injunctive relief militated against granting the plaintiffs' request.  *Id*. at *8.  The court concluded that the plaintiffs would not suffer any irreparable harm because they still had the choice to take online classes or defer enrollment. The court also found that "the balance of equities tip[ed] in [the defendants'] favor given the strong public interest . . . [in] preventing further spread of COVID-19 on campus . . . ." *Id. See also Norris v. Stanley*, Civ. No. 21-756, 2021 WL 3891615 (W.D. Mich. Aug. 31, 2021) (denying an employees' petition for injunctive relief against Michigan State University's COVID-19 vaccine mandate based on *Jacobson* and other persuasive authorities, together with her failure to demonstrate that she had a constitutionally protected property interest in her employment and her inability to show the vaccine policy was not rationally related to a legitimate government interest).

Here, the Court finds Plaintiffs' attempt to distinguish *Jacobson* unpersuasive. First, the Court rejects Plaintiffs' ill-fated effort to circumvent well-established Supreme Court precedent by re-categorizing the COVID-19 vaccines as "Gene Therapy Products." As Defendants point out, Plaintiffs have advanced no medical authority for this notion. Moreover, Defendants have supplied the position of the Centers for Disease Control and Prevention ("CDC") with respect to whether the COVID-19 vaccines in fact qualify as vaccines:

> Is the mRNA vaccine considered a vaccine?
>
> Yes. mRNA vaccines, such as Pfizer-BioNTech and Moderna, work differently than other types of vaccines, but they still trigger an immune response inside your body. This type of vaccine is new, but research and development on it has been under way for decades.

Centers for Disease Control and Prevention, "Myths and Facts about COVID-19 Vaccines," attached as Exhibit 20 to the Declaration of Daniel M. Vannella, Esq. (ECF No. 7-3.) Accordingly, the CDC has clearly opined that these constitute "vaccines." The Court has deferred to the expertise of the CDC and its guidance with respect to COVID-19 in the past and sees no reason to depart from it in this case. *See, e.g., United States v. Roberts*, Crim. No. 19-134 (ECF No. 650) (D.N.J. Sept. 21, 2021) (Wolfson, Ch. J.) (citing to CDC guidance as part of denying a challenge to the district's standing order regarding COVID-19 safety requirements for courthouse admission).

Plaintiffs' semantic argument aside, the United States Supreme Court recently denied, without explanation, an application for injunctive relief against Indiana University's COVID-19 vaccination policy. As explained above, the Seventh Circuit reviewed this same application and denied the plaintiffs' request for injunctive relief based on *Jacobson*. In addition, other courts— including this one—reviewed similar challenges to COVID-19 vaccine policies and have uniformly concluded that *Jacobson* controls.

This case is easier than *Jacobson* for several reasons. *See Klaassen*, 7 F.4th at 593; *Harris*, 2021 WL 3848012, at *6. First, the compulsory vaccination statute in *Jacobson* was even more stringent than TCNJ's Mandate, which provides stronger grounds to deny injunctive relief. Unlike the statute in *Jacobson*, there is no criminal or financial penalty for failure to comply with the Mandate. Second, the Mandate is limited to TCNJ students attending campus, and it incorporates accommodations by allowing students to apply for exemptions based on religious or medical grounds. Third, Plaintiffs have the choice to become fully remote students, defer enrollment for a semester (like Messina), or transfer to a school with no COVID-19 vaccination policy. To the extent Plaintiffs take issue with the restrictions imposed on exempt students, "Plaintiffs have ample educational opportunities" and "may go elsewhere." *Klaassen*, 7 F.4th at 593. Moreover, this Court agrees with the Seventh Circuit's observation that restrictions placed on exempt students, namely routine testing and social distancing, are "requirements that are not constitutionally problematic." *Id.*

As for Plaintiffs' arguments concerning the efficacy of the COVID-19 vaccines, it is not this Court's function to determine the most effective method to protect the public against COVID-19. *Jacobson*, 197 U.S. at 30. Instead, it is for the legislature to determine what method of protection would likely be effective. *Id.* Moreover, in New Jersey, every public and independent institution of higher education must, "as a condition of admission or continued enrollment, require every graduate and undergraduate student" to provide the school with valid immunization records. N.J. Stat. Ann. § 18A:61D-1. New Jersey colleges and universities are allowed to "establish additional requirements for student immunizations and documentation that such institution shall determine appropriate and which is recommended by the [Advisory Committee on Immunization Practices ("ACIP")]." N.J. Admin. Code § 8:57-6.4. As Defendants

point out, each of the three COVID-19 vaccines have indeed been recommended by the ACIP. (Defs.' Ex. 29, ECF No. 7-4)

Although Plaintiffs have a right to refuse unwanted medical treatment, this right is not absolute.  *Jacobson* 197 U.S. at 26.  Given the severity of the ongoing COVID-19 pandemic and number of COVID-19-related deaths in New Jersey, there is a real and substantial relation between the Mandate and the need to protect the public health.  Like in *Jacobson*, other states and countries have enacted similar vaccine policies, and this lends more credence to the Mandate at issue. Accordingly, the Court finds that Plaintiffs have failed to show likelihood of success on the merits.

### B.  Irreparable Harm to the Moving Party

Plaintiffs also failed to establish they will suffer irreparable harm or injury if this Court does not grant them injunctive relief.  Dieker, Jacob, Zimberg, and Walz—all of whom are exempt students subject to routine testing and several restrictions under the Mandate—argue that denying injunctive relief would result in "repeated violations of their rights and bodily autonomy." (Moving Br. at 38–39.)  Messina, who has deferred enrollment for a semester, argues that denying injunctive relief would result in "a total derailment of her education because she cannot attend school."  (*Id.*)  However, TCNJ announced its Mandate on or around May 10, 2021, and Plaintiffs commenced this action on September 27, 2021. (Compl. at ¶ 9.)  Therefore, any purported harm Plaintiffs may face is a consequence of their own delay because they waited over four months to request injunctive relief.  *See EMSL Analytical, Inc. v. Testamerica Analytical Testing Corp.*, Civ. No. 05-5259, 2006 WL 892718, at *12 (D.N.J. Apr. 4, 2006) (explaining that a plaintiff's delay "in seeking preliminary injunctive relief . . . is evidence that speedy relief is not needed"); *Lanin v. Borough of Tenafly*, No. 12-3399, 2013 WL 936363, at *3 (3d Cir. Mar. 12, 2013) ("[P]reliminary injunctions are generally granted under the theory that there is an urgent need for

speedy action to protect the plaintiffs' rights.  Delay in seeking enforcement of those rights . . .

tends to indicate at least a reduced need for such drastic, speedy action." (quoting *Citibank, N.A.*

*v. Citytrust*, 756 F.2d 273, 275 (2d Cir.1985)).

Plaintiffs also could have sought a preliminary injunction months before the semester

began rather than after the semester began.  In addition, Plaintiffs had the opportunity to become

fully remote students or to transfer to another university without a COVID-19 vaccination

requirement.  As for Messina, she faces no irreparable harm because she deferred enrollment this

semester.  *See Harris*, 2021 WL 3848012, at *8 ("Even with the Vaccine Policy, students who

choose not to comply with [it] may still take online classes at UMass, or defer their enrollment for

a semester, not amounting to irreparable harm.").  Accordingly, this Court finds that Plaintiffs'

delay, which indicates a reduced need for speedy relief, created self-inflicted harm and weighs

against granting injunctive relief.

## C.  Harm to the Non-moving Party

This Court turns next to whether granting relief would result in greater harm to Defendants.

Plaintiffs argue that Defendants would suffer "no irreparable harm" by enjoining the Mandate.

(Moving Br. at 39.)  However, if an injunctive relief were granted and the Mandate lifted, TCNJ

would face the possibility of a widespread COVID-19 outbreak on campus.  This outbreak would

impact TCNJ's faculty and staff, students living on campus, students who commute, and anyone

else these individuals interact with both on and off campus.  Plaintiffs argue that TCNJ has "many

alternative and constitutional methods" at its disposal to control the spread of COVID-19 on

campus.  (*Id.*)  However, beyond this bald statement Plaintiffs provide not a single example of any

appropriate methods.  For these reasons, this Court concludes that granting injunctive relief in this

instance would cause greater harm to Defendants by exposing TCNJ and its community to significant health and safety risks.

### D. Public Interest

Plaintiffs also failed to show that granting injunctive relief in this instance would serve the public interest.  Plaintiffs argue the public interest is served by enjoining unconstitutional policies that intrude upon people's liberty and privacy rights.  (Moving Br. at 40.)  However, as the district court in *Klaassen* explained, "students have a significant liberty interest in refusing unwanted medical treatment," but "power can be rightfully exercised over any member of a civilized community, against his will, . . . to prevent harm to others." *Klaassen v. Trs. of Ind. Univ.*, Civ. No. 21-238, 2021 WL 3073926, at *43 (N.D. Ind. July 18, 2021) (citation omitted).  "If the students' decision to refuse the vaccine affected themselves alone, the balance of harms would almost certainly weigh in favor of granting a preliminary injunction." *Id.*  However, it does not. Plaintiffs are not the only ones harmed by refusing to comply with the Mandate's vaccination requirement and restrictions. *See Klaassen*, 2021 WL 3073926, at *43 (explaining that refusal to become vaccinated and to comply with heightened safety precautions "impacts the public interest" because  "the students 'are not asking to be allowed to make a self-contained choice to risk only their own health' in making this decision—their decision necessarily bears on the health of other students, faculty, and staff" (quoting *Cassell v. Snyders*, 990 F.3d 539, 550 (7th Cir. 2021))).

TCNJ's Mandate protects both its community and the public at large.  Enjoining the Mandate would not serve the public interest in preventing the spread of COVID-19, a virus that has taken the lives of many New Jersey residents. *See Harris*, 2021 WL 3848012, at *8 (noting there was a "strong public interest" in "preventing further spread of COVID-19 on campus, a virus

which has infected and taken the lives of thousands of Massachusetts residents"). Therefore, this strong public interest weighs against granting Plaintiffs injunctive relief.

## V.    <u>CONCLUSION</u>

For the reasons set forth above, the Court finds that Plaintiffs have not shown a preliminary injunction is warranted in this case. Plaintiffs' motion will therefore be denied. An appropriate order will follow.

_____ s/ Zahid N. Quraishi _____
ZAHID N. QURAISHI
UNITED STATES DISTRICT JUDGE
