UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CATALINA MESSINA, *et al.*,

Plaintiffs,

v.

THE COLLEGE OF NEW JERSEY, *et al.*,

Defendants.

Civil Action No. 21-17576 (ZNQ) (DEA)

OPINION

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Dismiss by The College of New Jersey and The Board of Trustees of the College of New Jersey (collectively, "Defendants or TCNJ"). ("Motion," ECF No. 15; *see* "Moving Br.," ECF No. 15-1.) Plaintiffs Catalina Messina, Katherine Dieker, Christopher Jacob, Anna Zimberg, and Isabella Wal filed opposition, ("Opp'n Br.," ECF No. 17-2), to which Defendants replied (ECF No. 25). The Court carefully considered the parties' submissions and decided the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, the Court will grant Defendants' Motion.

**I.    PROCEDURAL HISTORY & BACKGROUND**

The Court incorporates by reference the factual background articulated in its opinion from October 14, 2021, denying Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunction. *Messina v. Coll. of New Jersey*, 566 F. Supp. 3d 236, 245 (D.N.J. 2021). The Court, however, provides a brief factual and procedural background for context.

On September 27, 2021, Plaintiffs initiated this action seeking declaratory and injunctive relief with respect to TCNJ's COVID-19 vaccine mandate (the "Mandate"). (Compl. ¶ 2, ECF

1

No. 1.) According to the Complaint, on May 10, 2021, TCNJ implemented the Mandate requiring all students to be fully vaccinated against COVID-19. (*Id.* ¶ 9.) TCNJ provided its students with a deadline to receive the first dose of the vaccine and upload proof of same onto TCNJ's online application that tracks their students' medical information. (*Id.* ¶ 11.) TCNJ advised students that failure to meet the vaccination requirement would result in deregistration from classes and render them ineligible to participate in certain school activities the upcoming fall semester. (*Id.* ¶ 12.)

The Mandate permitted certain students to become exempt from the vaccine requirement for either religious or medical reasons. (*Id.* ¶ 13.) Any exemption-related documents would become part of a student's immunization record and were subject to periodic review. (*Id.* ¶ 16.) Under the Mandate, exempt students were required to undergo medical testing twice a week and would be monitored through test results and daily health screenings. (*Id.* ¶ 18.) The Mandate also required exempt students to practice social distancing, and it banned them from living on campus, participating in non-varsity athletic clubs, engaging in high contact activities, and traveling overnight with varsity teams. (*Id.*)

Plaintiffs are all current students at TCNJ and were all granted exemptions under the Mandate. (*Id.* ¶¶ 7, 45, 54, 63, 68, 76.) The Complaint contains several constitutional claims for purported violations of Plaintiffs' rights to liberty and privacy, equal protection, and the right to be free from unreasonable searches and seizures.[1] (*Id.* ¶¶ 81–108.) Plaintiffs challenge both the vaccination requirement and the restrictions imposed on exempt students, such as themselves. (*Id.*) They seek declaratory and injunctive relief. (*Id.* ¶ 1.)

At the outset of this action, the Court denied Plaintiffs' Motion for a Temporary Restraining Order and/or Preliminary Injunction. In pertinent part, the Court held that Plaintiffs had failed to

---

[1] Plaintiffs have consented to dismissal of their 42 U.S.C. § 1983 claim (Count V) against Defendants. (Opp'n Br. at 4.) The Court will, therefore, only address the Motion to Dismiss as to the remaining Counts.

2

establish their likelihood of success on the merits given Supreme Court precedent and persuasive authorities from other circuits on the issue of COVID-19 vaccination requirements and related restrictions. *Messina*, 566 F. Supp. 3d at 245.

At this juncture, Defendants move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants argue that: (1) the Court lacks subject-matter jurisdiction over them because of sovereign immunity; and (2) TCNJ's Mandate does not violate the Constitution.[2] (*See generally* Moving. Br., ECF No. 15-1.)

## II.  **LEGAL STANDARD**

Rule 12(b)(1) mandates the dismissal of a case for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). An assertion of Eleventh Amendment immunity challenges a district court's subject-matter jurisdiction. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996) ("the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction"). Typically, the plaintiff bears the burden of persuading the court that subject- matter jurisdiction exists when jurisdiction is challenged pursuant to Rule 12(b)(1). *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). However, because "Eleventh Amendment immunity can be expressly waived by a party, or forfeited through non-assertion, it does not implicate federal[-]subject matter jurisdiction in the ordinary sense." *Christy v. Pennsylvania Turnpike Comm.*, 54 F.3d 1140, 1144 (3d Cir. 1994) (citing *ITSI TV Prods. v. Agric.*

---

[2] Defendants argue, in passing, that Plaintiffs lack standing to challenge TCNJ's vaccine requirement itself because Plaintiffs are exempt from the vaccination requirement. (Moving. Br. at 20 n.7.) The Court notes that Defendants made a similar argument in their brief opposing Plaintiffs' Motion for a Temporary Restraining Order and/or Preliminary Injunction. *Messina*, 566 F. Supp. 3d at 241–42. The Court rejected Defendants' argument at that time and likewise rejects it now. *Id.* at 245 n.2. Defendants attempt to distinguish Plaintiffs' standing as to their claims concerning the vaccination requirement and their claims concerning the restrictions imposed on exempt students. The Court finds this distinction is inconsequential. But for TCNJ's Mandate imposing a vaccination requirement, Plaintiffs would not have had to choose between complying with the requirement or applying for an exemption. In other words, Plaintiffs would not have alleged "an invasion of a legally protected interest" (*i.e.*, a right to liberty and privacy) had Defendants not imposed a vaccination requirement. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Accordingly, Plaintiffs do not lack standing to challenge the Mandate's vaccination requirement.

3

*Ass'ns*, 3 F.3d 1289, 1291 (9th Cir.1993)). Therefore, a party asserting Eleventh Amendment immunity bears the burden of proving its applicability. *Id. See Bowers v. Nat'l Collegiate Athletic Ass'n Act, Inc.*, 475 F.3d 524, 546 n.25 (3d Cir. 2007).

### III.   DISCUSSION

Defendants argue that they are entitled to sovereign immunity because TCNJ is an arm of the State. (Moving Br. 10.) In opposition, Plaintiffs argue that Defendants are not immune from suit because Plaintiffs seek declaratory judgment, not money damages.[3] (Opp'n Br. at 4–5.)

Sovereign immunity "immunizes from suit in federal court both non-consenting states and those entities that are so intertwined with them as to render them 'arms of the state.'" *Karns v. Shanahan*, 879 F.3d 504, 513 (3d Cir. 2018) (quoting *Bowers*, 475 F.3d at 545). *See also Thorpe v. New Jersey*, 246 Fed. App'x 86, 87 (3d Cir. 2007) ("The Eleventh Amendment of the U.S. Constitution protects a state or state agency from a suit brought in federal court by one of its own citizens regardless of the relief sought").

To determine whether an entity is an arm of the State, the Third Circuit weighs the following factors: "(1) whether the payment of the judgment would come from the state; (2) what status the entity has under state law; and (3) what degree of autonomy the entity has." *Bowers*, 475 F.3d at 546; *see also Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989). Each step of the analysis is a "fact-intensive" undertaking that requires "individualized determinations" for each entity claiming Eleventh Amendment immunity. *Bowers*, 475 F.3d at 546. After identifying the direction in which each *Fitchik* factor points, the Court must then

---

[3] Eleventh Amendment immunity is subject to three primary exceptions: "(1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law." *Pennsylvania Federation of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002). None of these exceptions apply here. The Court, therefore, disagrees with Plaintiffs' argument that Defendants are not immune from suit because Plaintiffs seek declaratory judgment.

4

balance the factors to determine whether an entity amounts to an arm of the State. *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 84 (3d Cir. 2016). All three *Fitchik* factors are treated as co-equals. *Id.* (citation omitted).

The Third Circuit recognizes that other circuits "have almost uniformly concluded that state-affiliated universities are arms of their respective States." *Maliandi*, 845 F.3d at 85 (collecting cases). "However, because the particulars of [the] *Fitchik* test differ from analogous tests in other [c]ircuits and because each entity seeking immunity warrants an individualized analysis," those cases do not dictate the answer here. *Id.* Accordingly, the Court will now consider the *Fitchik* factors to determine whether TCNJ is an arm of the state and is immune from suit.

First, the Court considers whether the payment of the judgment would come from the state. In *Maliandi*, the Third Circuit found that this factor tipped "decisively" in favor of finding that Montclair State University was not an arm of the state. 845 F.3d at 91. In *Jones*, the Third Circuit reached the same conclusion with respect to Ramapo College of New Jersey, in part, because the school was "subject to the same laws regarding funding as Montclair . . . ." *Jones v. Pi Kappa Alpha Int'l Fraternity, Inc.*, 765 Fed. App'x 802, 807 (3d Cir. 2019). Accordingly, the Court finds that this factor weighs against finding that TCNJ is an arm of the state because TCNJ is subject to the same laws regarding funding as Montclair and Ramapo.

Second, the Court will look at the "status of the agency under state law," which takes into account "how state law treats the agency generally, whether the entity is separately incorporated, whether the agency can sue or be sued in its own right, and whether it is immune from state taxation." *Fitchik*, 873 F.2d at 659. Courts also consider "the entity's authority to exercise the power of eminent domain, application of state administrative procedure and civil service laws to

5

the entity, the entity's ability to enter contracts and make purchases on its own behalf, and whether the entity owns its own real estate." *Maliandi*, 845 F.3d at 91.

Here, TCNJ shares all the same characteristics that led the Third Circuit to conclude that the "status under state law" factor weighed in favor of finding that Montclair and Ramapo were arms of the State. *See Maliandi*, 845 F.3d at 91–96; *Jones*, 765 Fed. App'x at 807. For example, TCNJ is not authorized by statute to sue and be sued. N.J. Stat. Ann. §§ 18A:64-6, 18A:3B-6. *See Maliandi*, 845 F.3d at 94 ("An entity is more likely to be an arm of the State and partake of Eleventh Amendment immunity if it lacks the ability to sue and be sued in its own name." (citing *Fitchik*, 873 F.2d at 663)). In addition, like in *Maliandi*, TCNJ is immune from all state taxation, which "weighs in favor of immunity." *Id.* at 95. TCNJ also has the power of eminent domain, N.J. Stat. Ann. § 18A:64-6(l), which points in the same direction. *See Maliandi*, 845 F.3d at 95; *Jones*, 765 Fed. App'x at 807. In addition, New Jersey considers TCNJ to be a "state agency" authorized to adjudicate contested cases under the state Administrative Procedure Act, N.J. Stat. Ann. § 52:14B-2. See N.J. Stat. Ann. § 18A:3B-6(f); N.J. Ct. R. 2:2-3(a)(2).

Moreover, many TCNJ employees are subject to New Jersey's civil service laws, N.J. Stat. Ann. § 18A:64-6(i), and many benefit from the state health care and pension programs, N.J. Stat. Ann. § 18A:66-170. Since TCNJ is a State employer, it is required to abide by and enforce state policy prohibiting discrimination in the workplace. *See* N.J. Admin. Code § 4A:7-3.1. Notably, the Governor represents TCNJ in its negotiations with its employees' collective bargaining units, and those negotiations are governed by the New Jersey Employer-Employee Relations Act, N.J. Stat. Ann. §§ 34:13A-1 to -30. *See Maliandi*, 845 F.3d at 97; N.J. Stat. Ann. § 18A:64-21.1. In sum, TCNJ's status under state law weighs in favor of finding that it is an arm of the state.

Third, the Court will consider TCNJ's autonomy. Under this *Fitchik* factor, courts focus on its "governing structure and the oversight and control exerted by a State's governor and legislature." *Maliandi*, 845 F.3d at 96. "The lesser the autonomy of the entity and greater the control by the State, the greater the likelihood the entity will share in the State's Eleventh Amendment immunity." *Id.*

Much like Montclair and Ramapo, TCNJ's governing structure lacks independence from the State for purposes of the Eleventh Amendment. *See Maliandi*, 845 F.3d at 97-98; *Jones*, 765 Fed. App'x at 808. The Court will briefly highlight some considerations that favor immunity. For starters, the entire TCNJ Board is appointed by the Governor with the advice and consent of the New Jersey Senate. *Maliandi*, 845 F.3d at 97 ("The Governor looms large in the affairs of New Jersey state colleges. All members of the Board of Trustees are appointed by the Governor and confirmed by the state senate for six-year terms, from which they are removable for cause."). *See* N.J. Stat. Ann. § 18A:64-3. The Governor-appointed and Senate-confirmed Board is then responsible for appointing TCNJ's President, who serves at the pleasure of the Board. N.J. Stat. Ann. § 18A:64-6(g). In addition, the Governor is "statutorily designated as the public 'employer' of all college employees, which vests him with the sole power to collectively bargain on their behalf." *Maliandi*, 845 F.3d at 97 (quoting N.J. Stat. Ann. § 18A:64-21.1).

Moreover, TCNJ's Board is subject to operational constraints and owes a range of obligations to the State. *See generally* N.J. Stat. Ann. § 18A:64-6. For example, the Board of Trustees of a New Jersey college directs and controls "expenditures and transfers of funds appropriated to the college and tuition received by the college, in accordance with the provisions of the State budget and appropriation acts of the Legislature . . . ." N.J. Stat. Ann. § 18A:64-6(f). Notably, "[a]ll accounts of the college [is] subject to audit by the State at any time . . . ." *Id. See*

7

*also Maliandi*, 845 F.3d at 98. In addition, "each college's board of trustees is required to hold a September meeting every year, and the presidents of each college (who are, themselves, selected by the gubernatorial-appointed board . . .) are required by law to sit on the Presidents' Council." *Maliandi*, 845 F.3d at 98 (citations omitted). In sum, state colleges are "subject to significant reporting requirements and rules for internal governance." *Id.*

Furthermore, the Secretary of Higher Education (a member of the Governor's cabinet) oversees institutions of higher education in New Jersey, including TCNJ. *Maliandi*, 845 F.3d at 97–98; N.J. Stat. Ann. § 18A:3B-14. The Secretary "has authority to issue master plans for higher education in the State, license and accredit the institutions, impose ethics rules for them, approve certain new academic programs, review budget requests, and issue regulations relating to licensure, outside employment, tuition, personnel, tenure, and retirement programs." *Maliandi*, 845 F.3d at 97 (citation omitted). The Secretary may also "visit a school at any time to review its financials and compliance with all appropriate laws and regulations and may issue subpoenas to investigate suspected wrongdoing." *Id.* (citing N.J. Stat. Ann. § 18A:3B-34). The Court finds that the State exerts sufficient control over TCNJ such that the autonomy factor weighs in favor of finding TCNJ is an arm of the state.

In conclusion, two of the three co-equal *Fitchik* factors tip in favor of finding that TCNJ is an arm of the state. Moreover, because TCNJ "is a New Jersey state college governed by the same statutes that govern[] Montclair" and Ramapo, the Court is "compelled by *Maliandi* to conclude that [TCNJ] is an arm of the state under the *Fitchik* factors." *Jones*, 765 Fed. App'x at 807. Defendants are, therefore, entitled to sovereign immunity, and Plaintiffs' claims against Defendants are dismissed with prejudice for lack of subject matter jurisdiction.[4]

---

[4] *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012); *Kaul v. Christie*, 372 F. Supp. 3d 206, 243 (D.N.J. 2019).

8

## IV. CONCLUSION

For the reasons set forth above, the Court grants Defendants' Motion to Dismiss. An appropriate order will follow.

Date: **August 31, 2022**

ZAHID N. QURAISHI
UNITED STATES DISTRICT JUDGE